

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,
        Plaintiff,

                                  Case No. 5:21-CR-162

        v.

RONALD JACKSON,
        Defendant.

## MOTION FOR EARLY TERMINATION
## OF SUPERVISED RELEASE

**NOW COMES** RONALD JACKSON, motioning this Court *in propria persona* (*pro se*) to terminate the imposed term of supervised release, reducing such to a "time already served" duration. This request is made pursuant to title 18 U.S.C. §3583(e)(1).

Proceedings which modify the terms or conditions of supervised release are governed by Federal Rules of Criminal Procedure 32.1(c). That rule requires a hearing before any change can be made unless the modification benefits the defendant, the defendant waives such a hearing, and the government is given an opportunity to respond. This modification is certainly beneficial, were the Court to grant it, and so I waive hearing and request this matter be decided on the merits of the pleadings alone.

### I.    CASE HISTORY

I was indicted in the Eastern District of New York in 2016 along with nine other co-defendants, and charged with conspiracy to possess with intent to distribute cocaine. I pleaded guilty to one count of that conspiracy and was sentenced on December 4, 2017

by Hon. Judge Donnely to Serve 70 months in prison followed by four years of supervised release. In addition to the standard conditions of supervised release, the Judgment Order also mandated that I comply with the forfeiture order associated with my sentencing and to participate in a drug treatment program as ordered by the probation department. See Doc. 2-2.

I was released from BOP custody on June 17, 2020 here in the Northern District of New York and began my term of supervised release here. Jurisdiction over this case was transferred from the Eastern District (and accepted by this Court) on May 18, 2021. Doc. 1. Several months later, in September of 2021, a request to modify the conditions of my supervised release was submitted to this Court after several drug tests I had taken tested positive for marijuana (THC).

The Court approved modification on September 7th, requiring 25 hours of community service and 30 days of home detention. *Id.*

After the conclusion of those 30 days, this Court issued a summons for revocation proceedings regarding the same issue, and I retained counsel (Paul G. Carey) to represent me for those proceedings. violation and revocation proceedings. Doc. 7. I pleaded guilty to the violation charged in the USPO Form 12C filing on October 28, 2021. Defense counsel then requested adjournment of sentencing, finally held on May 4, 2022.

This Court sentenced me to a one-day suspended term, with oral instructions at hearing to maintain clean conduct for six months, after which the Court would consider a

petition for early termination of supervised release. Now that seven months have passed since that hearing, I submit this motion per the Court's recommendation.

## II.   JURISDICTION

This Court accepted jurisdiction over the instant case on May 18, 2021 per 18 U.S.C. §3605. My revocation judgment this passed May included a one-day suspended custody term that I was not required to serve due to my conduct has been clean since then. Absent any return to confinement for longer than 30 days, my supervised release term continued to toll. Thus, the requirement that I serve one-year of supervision before early termination requests may be considered begun on my initial released date: June 7, 2020.

This Court, then, is the appropriate venue for this motion and has the authority to consider its merits because I have served more than one year of supervision.

## III.   STATUTORY FRAMEWORK – LIMITATIONS ON 3553(A) FACTOR CONSIDERATIONS IN §3583(e)(1) PROCEEDINGS

This Court is granted the authority to terminate a term of supervised release by 18 U.S.C. §3583(e)(1), which allows a district court to "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release…" Before deciding whether to terminate a term of supervision, the Court is directed to consider many of the same sentencing §3553(a) factors from original sentencing. Thereafter, the Court must conclude whether early termination is "…warranted by the conduct of the defendant released and in the interests of justice." *Id*.

Paraphrased, the specific §3553(a) factors that are to be considered for an early termination request are: the nature and circumstances of the offense, the history and character of the offender, and the need to:

- Deter future criminal conduct (specifically and generally);
- Protect the public; and,
- Provide education and job training, provide medical care or other correctional treatment.

The Court must also consider the sentencing ranges – and policies – from the Guidelines Manual, and avoid sentence disparities between similar cases, conduct, and defendants.

### *SUPERVISED RELEASE AND PUNISHMENT CONSIDERATIONS*

As established above, two 3553(a) factors are omitted from the list in §3583(e). "Omitted from the list of factors in section 3553(a) that are cross-referenced by section 3583(e) are subsections (2)(A) and (3)." *United States v. Flemming,* 397 F.3d 95 (2nd Cir. 2005); accord, *United States v. Cassesse,* 685 F.3d 186 fn. 5 (2nd Cir. 2012).

> "Section 3553(a) provides the framework for sentencing decisions, requiring the district court… to consider, *inter alia*, 'the need for the sentence imposed… to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.' Section 3583(c), which guides the district court in imposing a term of supervised release, is different. That section requires the district court to consider almost all of the § 3553(a) factors, but specifically does not require the district court to consider the factors listed in § 3553(a)(2)(A), all of which go to the seriousness of the defendant's offense." *United States v. Burden,* 860 F.3d 45, 56 (2nd Cir. 2017) (citations omitted).

The ramifications of Congress' omission of just this factor are far-reaching, yet the Second Circuit has not always recognized them. *Burden* explained the consequence of

factor (2)(A)'s omission this way:

> "Congress's omission of this set of factors accords with the purposes of supervised release. 'Supervised release [] is not a punishment *in lieu* of incarceration.' To the contrary, 'Congress intended supervised release to assist individuals in their transition to community life.' *United States v. Johnson*, 529 U.S. 53, 59, (2000)." *Burden* at 56 (citation omitted).

In the face of this recognition, two Second Circuit opinions – two decades apart – show the eventual recognition of these foundational principles of supervised release. Compare *United States v. Lussier*, 109 F.3d 32 (2nd Cir. 1997):

> "Subsection 3583(e)(2), in sum, requires the court to consider general **punishment issues** such as deterrence, public safety, rehabilitation, proportionality, and consistency, when it decides to 'modify, reduce, or enlarge' the term or conditions of supervised release…Subsection 3583(e)(2) on its face authorizes the court to modify conditions of supervised release only when general **punishment goals** would be better served by a modification." *Id.* at 35 (emphasis added).

…to the *Burden*, twenty years later:

> "Accordingly, '[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration.' *Id.* As such, '**a court may not take account of retribution** (the first purpose listed in § 3553(a)(2)) when imposing a term of supervised release." *Tapia v. United States*, 564 U.S. 319, 326(2011) (citing 18 U.S.C. § 3583(c))." *Burden,* at 56 (cleaned up).

*Lussier's* was overruled on other grounds the year prior to *Burden,* but *Burden* recognized the incorrect attribution of punishment goals to supervised release. The widely-accepted *stare decisis* over the last 25 years for early termination of supervised release was born with *Lussier*: requiring the defendant demonstrate, "changed circumstances – for instance, exceptionally good behavior" before early termination was warranted. *Id.* at 36.

Like the stance on punishment and supervised release, the Second Circuit reversed

this position as well. *Lussier* "does not *require* new or changed circumstances relating to the defendant" in order for to modify or terminate a term of supervised release. *United States v. Parisi,* 821 F.3d 343, 347 (2nd Cir. 2016).

> "So long as the court… considers the relevant 18 U.S.C. § 3553(a) sentencing factors, there is no additional requirement that it make a finding of new or changed circumstances with respect to the defendant." *Id.* (relying on, *inter alia, United States v. Davies,* 380 F.3d 329, 322 (8th Cir. 2004)("[T]he statute that authorizes district courts to modify the conditions of supervised release does not require new evidence, nor even changed circumstances in the defendant's life.")

No constraints, other than what is required by statute, are permitted for terminating a term of supervision. The court need only find that the interests of justice support granting early termination and that it is warranted by the conduct of the specific defendant. This reversal has been echoed throughout the country since *Parisi* was decided. See *United States v. Ponce,* 22 F.3d 1045 (9th Cir. 2022); *United States v. Melvin,* 978 F.3d 49 (3rd Cir. 2020); *United States v. McDonough,* 223 F.Supp.3d 231 (D. Mass. 2017).

### SUPERVISED RELEASE MODIFICATIONS ARE NOT BOUND BY MANDATES ON THE IMPOSITION OF A SENTENCE

Also missing from the list is a lesser-discussed sentencing factor, yet an omission with far broader consequence: factor 3553(a)(3).

Factors (a)(3) & (a)(4) appear nearly identical on their face. However, each invokes distinct requirements for a sentencing decision. Factor (a)(3) refers to the kinds of sentences and limitations generally available whereas (a)(4) considers specifically the impact of the Guidelines Manual. 18 U.S.C. §3553(a)(4) says, in relevant part:

> "The court, in determining the particular sentence to be imposed, shall consider— the kinds of sentence and the sentencing range **established for—**
> 
> (A) **the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—**
> 
> (i) **issued by the Sentencing Commission** pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);" (Emphasis added).

The "kinds" of available sentences invoked by factor (a)(3) include boundaries and requirements for those terms (including mandatory minimum, statutory maximums, and term-lengths stipulated in plea agreements). Maximum supervision terms, are found in §3583(b)(1)-(3) and mandatory minimum terms, when applicable, are contained in specific criminal statutes like 21 U.S.C. §841(b)(1).

In determining whether to modify a term of supervised release, factor (a)(3) is omitted and inapplicable. As held by the Sixth and Seventh Circuits, factor (a)(3) dictates the *imposition* of a sentence, but the mere existence of mandatory minimums from a charging statute does not abrogate the Court's authority to later *modify* that term. This includes terminating those terms. This conclusion is consistent in every Appellate Circuit to address the issue head-on. See *United States v. Spinelle*, 41 F.3d 1056, 1060 (6th Cir. 1994), *Pope v. Perdue*, 889 F.3d 410, 414 (7th Cir. 2018), *United States v. Carpenter*, 803 F.3d 1224, at n.4 (11th Cir. 2015).

Other Appellate Circuits assume this conclusion is correct, but have opted to punt the issue without deciding it. *United States v. Coleman*, No 16-10370 (5th Cir. 2017), and *United States v. Vargas*, 564 F.3d 618 at fn. 3 (2nd Cir. 2009) (assuming *Spinelle* was correct without deciding the issue).

This conclusion also aligns with implicit holdings of the Supreme Court. See *Johnson*, ante at 60 (Justice Kennedy, writing for a unanimous Court that a defendant

who was subject to a three-year mandatory minimum term of supervised release, "having completed one year of supervised release, he may also seek relief under 3583(e)(1).")

## IV. ARGUMENT: THE APPLICABLE SENTENCING FACTORS SUPPORT EARLY TERMINATION AS SERVING THE INTERESTS OF JUSTICE IN THIS CASE

Several years ago, Hon. Judge Weinstein penned an opinion in *United States v. Trotter*, 321 F.3d 337, 341 (E.D.N.Y. 2018) which put a spotlight on supervised release, its use and utility, and the conflict between evolving marijuana laws and federal supervision.

> "Effectively, courts are faced with a choice: imprison a marijuana user on supervised release or cut short supervision, forcing an attempt at further rehabilitation on the supervisee's own… Like many federal trial judges, I have been terminating supervision for "violations" by individuals with long-term marijuana habits who are otherwise rehabilitated. No useful purpose is served through the continuation of supervised release for many defendants whose only illegal conduct is following the now largely socially acceptable habit of marijuana use."

This Court was faced with a similar situation in May, when I faced my own violation and revocation proceedings for marijuana use. Using any other yardstick, my case is an easy example of being well-qualified for early termination.

I served a sentence over five years long, was released about 2 ½ years ago after graduating from RDAP, and succeeding quite well on supervision. I run my own business – a clothing brand – and create my own income from that business. While I was incarcerated, I took correspondence courses in fashion, merchandising and marketing, and continue to learn every day that I work on this business.

I earned my GED at 16, and even pursued a college degree before starting my business. I have had no serious interactions with law enforcement, the only time I have even interacted with law enforcement was after the Superbowl last year when I was driving home. For a fine that I had yet to pay, my license was suspended just before the department closed on Friday, not to reopen until Sunday, and gave no notification that day that my operator license was temporarily suspended.

I was pulled over after the Superbowl and cited for operating a vehicle with a suspended license. The week following, I showed up, payed the fine, and pleaded to a non-moving violation/citation and put the issue to rest.

Since my release, I've been required to call in each night for notice on whether I have a mandatory drug screening the next day. For thirty months, this requirement has persisted. While my track-record hasn't been perfect, this Court's direction at my last hearing echoed the sentiments in Trotter, and gave me the push I needed to keep going toward my goal of life without federal supervision.

I earn my own living with my own hands and marketing skills. I have a wonderful mother (who doubles as my landlord) who supports me and my future goals here in Utica. I am close with all my siblings who live locally as well, and my three children are all live within a few miles from me as well.

My son D'Ron is 20 years old now and a man all his own. He has a child of his own now, making me a grandfather for the first time. My younger two children, Lunden and Nyla, live with their mother Belon, and spend time with me several days a week.

Belon and I have developed a great friendship over the years of co-parenting even though we are no longer in a romantic relationship. Belon is a nurse and needs my schedule to be flexible to work around parenting with her on-call job. She worked throughout the entire COVID-19 pandemic without even questioning her choice of profession. Her determination and sheer will is an inspiration to me.

Supervision here has run its course. I have no vocational, housing, medical, or other needs that could be facilitated by spending more time on supervision. Like Defendant Trotter, the only prospect left for me on supervision is violation and revocation for actions which bare no consequence of any kind to friends and neighbors who must abide primarily by New York law, without being forced to reckon with the conflict between New York laws and those of the federal government.

The nature and circumstances of my offense give way to my character today. I am not perfect – nobody is – but I strive to be my best and can only see supervision as a hindrance to the growth of my business and future aspirations for that business.

But for the conditions of supervision, there is no eventuality that I will ever be arrested again. I am fully focused on myself, my family. and my business, with no time or energy for the illicit drug trade. My daughter has taken inspiration from my entrepreneurial side and has become a student of business herself. She has her own small business selling "Pop-Its,"[1] fidgeting toys, and bracelets that she makes herself.

---

1  Adhesive, round, pop-out attachments for the back of cell phone cases to more easily hold a phone. These are popular among kids and teenagers.

The time I have already spent on supervision is well within the applicable ranges set forth in sentencing factor §3553(a)(4), which is between 2-5 years. U.S.S.G. §5D1.2. That time is well over 50% of my total term of 48 months.

Further, because I am an RDAP graduate and my last failed drug screening was more than a year ago, the policy of both the Sentencing Commission and Judicial Conference recommend early termination. See §5D1.2 Application Note 5. See also *United States v. Shaw*, 445 F.Supp.3d 1060, 1163 (D.Colo. 2020) (discussing the 2018 revision to Monograph 109: "Post-Conviction Supervision").

Finally, with respect to other cases in the Northern District of New York who have been granted early termination, doing so here would not create a sentencing disparity for not having spent enough time on supervision. See, for example, *United States v. Williams*, No. 5:14-CR-230 (N.D.N.Y. Apr. 10, 2018), *United States v. Sousa*, No. 1:10-CR-1 (N.D.N.Y. Nov. 6, 2017), *United States v. Pollard*, No. 2:05-CR-16 (E.D.N.Y. Oct. 30, 2017), and *United States v. Sepulveda*, No. 1:03-CR-1492 (S.D.N.Y. Oct. 26, 2016).

Each of these defendants were subject to 4 and 5-year terms of supervised release after convictions under 21 U.S.C. §841(a)(1) and each had their respective terms of supervised release terminated before serving three years (with Defendant Sousa being the exception at 39-months served).

Finally, restitution is not applicable as a sentencing factor here because no fines or restitution were imposed. Further, the $100 special assessment I was given has been paid in full for many years now.

## V. CONCLUSION AND PRAYER FOR RELIEF

For the reasons stated herein, I pray the Court find that the interests of justice are served, and my conduct warrants, granting of early termination to my supervised release term.

    Respectfully submitted on this  22  day of December, 2022..

*[signature]*

RONALD JACKSON
*Pro Se* Defendant, Movant

<u>Compliance Statement</u>

This document complies with Local Rules 5.1, 7.1, & 10.1, and what follows is a concise memorandum of case history, points of authority, policy and argument to justify the request sought herein. It is written in double-space, 13-point Times New Roman and less than twenty-five (25) pages long.

CERTIFICATE OF SERVICE
FOR PRO SE DOCUMENTS

I, RONALD JACKSON, the undersigned *pro se* defendant in this case, attest with my signature blow that I have affected service of a true and correct copy of the following pleading upon the Court and the representative of the United States (as opposing counsel):

**MOTION TO TERMINATE DEFENDANT'S
SUPERVISED RELEASE TERM**

by placing the same in postage-prepaid mail with the U.S. Postal Service to the following addresses:

| **Michael D. Gadarian** | **Clerk of the U.S. District Court** |
|---|---|
| Office of the U.S. Attorney - Syracuse | Northern District of New York |
| P.O. Box 7198 | P.O. Box 7367 |
| 100 South Clinton Street | 100 South Clinton Street |
| Syracuse, NY 13261-7198 | Syracuse, NY 13261 |

by placing it in a sealed, postage prepaid envelope by United States Postal Mail

on the _22_ day of December, 2022.

_____
RONALD JACKSON
*Pro Se* Movant

Ronald Jackson
719 Chestnut Street
Unit #2
Utica, NY 13502

**CERTIFIED MAIL**

7022 2410 0000 2742 8649



U.S. POSTAGE PAID
FCM LG ENV
UTICA, NY
13501
DEC 22, 22
AMOUNT
**$6.40**
R2305K132853-20

U.S. DISTRICT COURT
JOHN M. DOMURAD, CLERK
DEC 28 2022
RECEIVED

**Clerk of the U.S. District Court**
Northern District of New York
P.O. Box 7367
100 South Clinton Street
Syracuse, NY 13261